# HENDRICK *v.* STATE OF MARYLAND.

ERROR TO THE CIRCUIT COURT OF PRINCE GEORGE'S COUNTY, STATE OF MARYLAND.

No. 77. Argued November 11, 12, 1914.—Decided January 5, 1915.

Only those whose rights are directly affected can properly question the constitutionality of a state statute and invoke the jurisdiction of this court in respect thereto.

Where a state statute provides as a prerequisite to the use of the highways of a State without cost by residents of other States compliance with the highway laws of their respective States, one who does not show such compliance cannot set up a claim for discrimination in this particular.

*Quære,* and not now decided, whether the Motor Vehicle Law of Maryland so discriminates against residents of the District of Columbia as to be an unconstitutional denial of equal protection of the laws in that respect. This court will assume, in the absence of a definite and authoritative ruling of the courts of a State to the contrary, that

when a statute shall be construed by the highest court, discrimination against the residents of a particular State or Territory will be denied.

The movement of motor vehicles over highways being attended by constant and serious dangers to the public and also being abnormally destructive to the highways is a proper subject of police regulation by the State.

In the absence of national legislation covering the subject, a State may prescribe uniform regulations necessary for safety and order in respect to operation of motor vehicles on its highways including those moving in interstate commerce.

A reasonable graduated license fee on motor vehicles when imposed on those engaged in interstate commerce does not constitute a direct and material burden on such commerce and render the act imposing such fee void under the commerce clause of the Federal Constitution.

A State may require registration of motor vehicles; and a reasonable license fee is not unconstitutional as denial of equal protection of the laws because graduated according to the horse power of the engine. Such a classification is reasonable.

The reasonableness of the State's action is always subject to inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress.

A State which, at its own expense, furnishes special facilities for the use of those engaged in interstate and intrastate commerce may exact compensation therefor; and if the charges are reasonable and uniform they constitute no burden on interstate commerce. The action of the State in such respect must be treated as correct unless the contrary is made to appear.

A state motor vehicle law imposing reasonable license fees on motors, including those of non-residents, does not interfere with rights of citizens of the United States to pass through the State. *Crandall* v. *Nevada*, 6 Wall. 35, distinguished.

THE facts, which involve the construction and constitutionality of certain provisions of the Motor Vehicle Law of Maryland and their application to citizens of the District of Columbia, are stated in the opinion.

*Mr. Jackson H. Ralston* and *Mr. Osborne I. Yellott*, with whom *Mr. Clement L. Bouve* and *Mr. William E. Richardson* were on the brief, for plaintiff in error:

The act is an illegal attempt to regulate interstate commerce.

Passing into or through States of the Union in automobiles is an act of interstate commerce.

The matter of interstate transportation of passengers is one capable of uniform regulation and legislation, and is thus exclusively within the domain of Congress and wholly apart from regulation or interference on the part of the States.

Where, in subjects requiring uniformity of legislation, such as interstate transportation of passengers, the state law comes into direct conflict with the commerce clause, it is illegal, although a *bona fide* attempt to exercise the police power of the State.

The exaction of license and registration fees as conditional to the privilege of the use of the roads of the State of Maryland is an attempt to regulate interstate commerce directly, and imposes a burden on such commerce.

The Maryland law is unconstitutional, as violative of the rights of citizens of the United States to pass into and through Maryland.

The Motor Vehicle Law discriminates unconstitutionally against the residents of the District of Columbia.

The Motor Vehicle Law is further unconstitutional, in that it is not a *bona fide* exercise of the police power of the State, but an unlawful attempt to collect revenue for the State.

The law is unconstitutional in that the registration fees provided for and graded according to differing scales of payment have no relation to the necessary expense of identification or control of motor vehicles, and constitutes arbitrary, unequal, unfair, and class legislation, and does not insure to the citizens of the United States equal protection of the laws.

The tax imposed is not laid as compensation for the use of the roads.

In support of these contentions see *Adams Express Co.* v. *The Auditor,* 166 U. S. 976; *Bowman* v. *C. & N. W. R. R.,* 125 U. S. 465; *Brennan* v. *Titusville,* 153 U. S. 289; *Chy Lung* v. *Freeman,* 92 U. S. 275; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Covington Bridge* v. *Kentucky,* 154 U. S. 204; *Crandall* v. *Nevada,* 6 Wall. 35; *Fargo* v. *Stevens,* 121 U. S. 230; Fed. Cas., No. 18260; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Henderson Bridge Co.* v. *Mayor,* 141 U. S. 679; *Hendrick* v. *Maryland,* 115 Maryland, 552; *Int. Text Book Co.* v. *Pigg,* 217 U. S. 91; *Packet Co.* v. *St. Louis,* 100 U. S. 423; *Leisy* v. *Hardin,* 100 U. S. 135; *Leloup* v. *Mobile,* 127 U. S. 640; *License Cases,* 5 How. 504, 592; *Mobile Co.* v. *Kimball,* 102 U. S. 691; *Moran* v. *New Orleans,* 112 U. S. 69; *Paul* v. *Virginia,* 8 Wall. 75; *Pickard* v. *Pullman Co.,* 117 U. S. 34; *Pullman Co.* v. *Twombly,* 29 Fed. Rep. 667; *Railroad Co.* v. *Hasen,* 95 U. S. 465; *Robbins* v. *Shelby Co.,* 120 U. S. 489; *Slaughter House Cases,* 16 Wall. 394; *State Freight Tax,* 15 Wall. 232; *United States* v. *Col. & N. W. R. R.,* 157 Fed. Rep. 325; *Welton* v. *Missouri,* 91 U. S. 295; *Williams* v. *Fears,* 50 L. R. A. 685; Cooley on Const. Lim., 5th ed., p. 501; Cooley on Taxation, 2d ed., p. 99; 8 Cyc., p. 1042; Miller on Const. Law, p. 260; Public General Laws of Maryland, 1910, ch. 207, §§ 131, 132, 133, 136, 137, 138, 140*a*, 140*o*, 140*p*, 140*r*.

*Mr. Enos S. Stockbridge* and *Mr. Edgar Allan Poe,* Attorney General of the State of Maryland, for defendant in error:

The act of 1910 is a valid exercise of police power by the State of Maryland.

There are not any new or unusual principles involved in this case, but simply the application of doctrines long recognized, and at this late date thoroughly crystallized. Since *Gibbons* v. *Ogden,* 9 Wheat. 1, 203, this court has rec-

ognized the right of the States to regulate and control
their highways under what is termed "the police power."
*Cardwell* v. *Bridge Co.*, 113 U. S. 205; *Phillips* v. *Mobile*,
208 U. S. 472; *Minnesota Rate Cases*, 230 U. S. 352, 411;
*New York* v. *Miln*, 11 Pet. 102; *Barbier* v. *Connolly*, 113
U. S. 27, 31; *New Orleans Gas Co.* v. *Louisiana*, 115 U. S.
650, 661; *Jones* v. *Brim*, 165 U. S. 180, 182; *Gloucester
Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, 215; *Slaughter
House Cases*, 16 Wall. 36, 63; *Escanaba Trans. Co.* v.
*Chicago*, 107 U. S. 678; *Lake Shore* v. *Ohio*, 173 U. S.
285, 303; *Robbins* v. *Shelby Co.*, 120 U. S. 489.

Since the automobile came into more or less common
use, this precise question has not been before this court;
but see decisions in state courts, holding such regulations
to be a proper exercise of this power. *Ruggles* v. *State*,
120 Maryland, 553, 561; *Ayres* v. *Chicago*, 239 Illinois, 237;
*Commonwealth* v. *Kingsbury*, 199 Massachusetts, 542,
544; *State* v. *Mayo*, 106 Maine, 62; *Brazier* v. *Philadelphia*,
215 Pa. St. 297; *Bozeman* v. *State*, 7 Ala. App. 151; *Unwen*
v. *New Jersey*, 73 N. J. L. 529, aff'd 75 N. J. L. 500;
*Kane* v. *Titus*, 81 N. J. L. 594.

Although regulation by the States may incidentally
affect interstate commerce, nevertheless, such regulation
is valid until Congress does act. *Minnesota Rate Cases*,
230 U. S. 352, 411; *Monongahela Nav. Co.* v. *United States*,
148 U. S. 312, 333; *Covington Bridge Co.* v. *Kentucky*, 154
U. S. 204, 209; *Robbins* v. *Shelby Co.*, 120 U. S. 489; *Huse*
v. *Glover*, 119 U. S. 543.

Legislation having for its purpose the regulation of
highways and the protection of life and property against
those using the highways, is a matter of local concern
and not national in its character. *Mobile Co.* v. *Kimball*,
102 U. S. 691, 697.

In the absence of any light on the question from the
record, the court cannot pass on the question as to whether
the amount of the licenses prescribed by the act in ques-

tion bears any relation to the necessary expense of identification or control of motor vehicles operated in the State of Maryland. *Red "C" Oil Co.* v. *North Carolina*, 222 U. S. 380; *Atl. & Pac. Tel. Co.* v. *Philadelphia*, 190 U. S. 165; *West. Un. Tel. Co.* v. *New Hope*, 187 U. S. 419; *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 354; *Packet Co.* v. *St. Louis*, 100 U. S. 423, 429; *Foote* v. *Maryland*, 232 U. S. 494, 504.

The mere fact that the funds received by the Commissioner of Motor Vehicles are to be turned over to the State Treasurer for the benefit of a road fund, does not render this law invalid as a tax under the guise of the police power. *Morgan* v. *Louisiana*, 118 U. S. 455; *Huse* v. *Glover*, 119 U. S. 543, 549; *Cleary* v. *Johnston*, 79 N. J. L. 49; *Hardin Storage Co.* v. *Chicago*, 235 Illinois, 58, 68.

The fact that the law operates only on motor vehicles does not create an unreasonable classification of vehicles using the roads, and is not an unlawful discrimination against a particular class. *Jones* v. *Brim*, 165 U. S. 180; *State* v. *Mayo*, 106 Maine, 62; *Christy* v. *Elliott*, 216 Illinois, 31; *State* v. *Swagerty*, 203 Missouri, 517.

The Fourteenth Amendment was never intended to abridge the police power of the State. If the act in question is properly within the police power of the State, this court will not inquire further. *Lochner* v. *New York*, 198 U. S. 45, 53; *Barbier* v. *Connolly*, 113 U. S. 27; *Minn. Rwy.* v. *Beckwith*, 129 U. S. 26, 33; *L'Hote* v. *New Orleans*, 177 U. S. 587, 596; *House* v. *Mays*, 219 U. S. 270, 282; *Broadnax* v. *Missouri*, 219 U. S. 285, 292; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 700.

Plaintiff in error was not engaged in interstate commerce. *Hatch* v. *Reardon*, 204 U. S. 152, 161; *Williams* v. *Walsh*, 222 U. S. 415, 422; *Gibbons* v. *Ogden*, 9 Wheat. 1, 189; *Mobile Co.* v. *Kimball*, 102 U. S. 691, 702; *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204; *Hoke* v. *United*

*States*, 227 U. S. 308, 320; *Wabash &c. Ry.* v. *Illinois*, 118 U. S. 556, 572.

In order to say that a person or thing is moving in interstate commerce, the movement must be continuous. *Susquehanna Coal Co.* v. *South Amboy*, 228 U. S. 665.

The right of the citizens to go to and from the States of the Union is not based upon the theory that by so doing they are engaged in interstate commerce. It is expressly put upon another ground in *Crandall* v. *Nevada*, 6 Wall. 35, 44.

The act is not in conflict with the commerce clause, although commerce between a State and the District of Columbia is interstate commerce. *Stoutenburgh* v. *Hennick*, 129 U. S. 141; *Hanley* v. *Kansas &c. Ry.*, 187 U. S. 617.

The States or their agents, municipal or private, may make and collect a charge for facilities rendered, and such a charge is not a tax or burden on or interference with interstate commerce, although it may incidentally affect interstate commerce. In return for the additional facilities and improved conveniences provided, States are permitted to charge and collect reasonable compensation.

As to toll charges for the use of improved navigable streams see *Kellogg* v. *Union Co.*, 12 Connecticut, 7; *Huse* v. *Glover*, 119 U. S. 543, 548; *Gloucester Ferry* v. *Pennsylvania*, 114 U. S. 196, 214; *Sands* v. *Manistee River*, 123 U. S. 288; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312, 333; *Thames Bank* v. *Lovell*, 18 Connecticut, 500.

As to bridges over navigable streams see *Escanaba Co.* v. *Chicago*, 107 U. S. 678, 683; *The Binghamton Bridge*, 3 Wall. 51; *Covington Bridge Co.* v. *Kentucky*, 154 U. S. 204, 221.

As to use of wharves or docks see *Cannon* v. *New Orleans*, 20 Wall. 577; *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packet Co.* v. *St. Louis*, 100 U. S. 423; *Vicksburg* v. *Tobin*, 100

U. S. 430; *Packet Co.* v. *Catlettsburg,* 105 U. S. 559; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691; *Packet Co.* v. *Aiken,* 121 U. S. 444; *Huse* v. *Glover,* 119 U. S. 543; *Atl. & Pac. Tel. Co.* v. *Pennsylvania,* 190 U. S. 160, 163.

As to the use of roads or streets see *Tomlinson* v. *Indianapolis,* 144 Indiana, 142; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 333; *Cleary* v. *Johnston,* 79 N. J. L. 49; *Kane* v. *Titus,* 81 N. J. L. 594.

The police power is a very extensive one, and is frequently exercised where it also results in raising a revenue. *Phillips* v. *Mobile,* 208 U. S. 472, 478; *Transportation Co.* v. *Parkersburg,* 107 U. S. 691, 699; *Packet Co.* v. *Aiken,* 121 U. S. 444, 449; *Huse* v. *Glover,* 119 U. S. 543, 549.

Citizens of the States and United States have the right to go into and leave any State of this Union without hindrance. *Crandall* v. *Nevada,* 6 Wall. 35; *Ward* v. *Maryland,* 12 Wall. 418, 430; *Slaughter House Cases,* 16 Wall. 36, 75.

A State may protect its own citizens and property, although the exercise of this right by the State may incidentally or remotely affect the right. *Railroad Co.* v. *Husen,* 95 U. S. 465, 473; *Minnesota Rate Cases,* 239 U. S. 352, 406.

A State is justified in requiring those, who elect to use on its highways a mode of travel that is abnormally destructive to that road, to compensate it for such use. *Kane* v. *Titus,* 81 N. J. L. 594.

The act constitutes no unlawful discrimination against residents of the District of Columbia. It is a proper exercise by the State of its police power. The alleged discrimination cannot be complained of under the Fourteenth Amendment. The Act could only be invalid under the privileges and immunities clause, or the equal protection of the laws clause. These clauses go no further than to prohibit the States from imposing greater restrictions or burdens on citizens of other States or the United States

than it does on its own citizens. The act conforms to this: *Ward* v. *Maryland*, 12 Wall. 418, 430; *Slaughter House Cases*, 16 Wall. 36, 77; *Blake* v. *McClung*, 172 U. S. 239, 249, 256.

Residents of the District of Columbia are classified differently from the residents of other States except Maryland. This classification is a reasonable one, and rests upon a well founded ground of distinction of which the court will take judicial notice. The court will also take judicial notice of the fact that there is no large city in any other State so situated with respect to the borders of Maryland. This is conclusive of the justness of the classification. *Heath* v. *Worst*, 207 U. S. 338, 355; *Patsone* v. *Pennsylvania*, 232 U. S. 138, 144; *Osan Lumber Co.* v. *Bank*, 207 U. S. 251; *Field* v. *Barber Asphalt Co.*, 194 U. S. 618.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Plaintiff in error was tried before a Justice of the Peace, Prince George's County, Maryland, upon a charge of violating the Motor Vehicle Law. A written motion to quash the warrant because of conflict between the statute and the Constitution of the United States was denied; he was found guilty and fined. Thereupon an appeal was taken to the Circuit Court—the highest in the State having jurisdiction—where the cause stood for trial *de novo* upon the original papers. It was there submitted for determination by the court upon an agreed statement of facts grievously verbose but in substance as follows:

The cause was originally brought July 27, 1910, before a Justice of the Peace for Prince George's County by the State against John T. Hendrick for violating § 133 of the Motor Vehicle Law effective July 1, 1910. He is and then was a citizen of the United States, resident and commorant

in the District of Columbia. On that day he left his office in Washington in his own automobile and drove it into Prince George's County and while temporarily there was arrested, on the charge of operating it upon the highways without having procured the certificate of registration required by § 133 of the Motor Vehicle Law. He was brought before a Justice of the Peace and fined fifteen dollars after having been found guilty of the charge set out in a warrant duly issued—a motion to quash having been denied. Whereupon he filed his appeal. At the time and place aforesaid he had not procured the certificate of registration for his automobile required by § 133. Upon the foregoing the court shall determine the questions and differences between the parties and render judgment according as their rights in law may appear in the same manner as if the facts aforesaid were proven upon the trial. Either party may appeal.

The Maryland legislature, by an act effective July 1, 1910 (c. 207, Laws 1910, 168, at p. 177), prescribed a comprehensive scheme for licensing and regulating motor vehicles. The following summary sufficiently indicates its provisions:

The Governor shall appoint a commissioner of motor vehicles, with power to designate assistants, who shall secure enforcement of the statute. Before any motor vehicle is operated upon the highways the owner shall make a statement to the commissioner and procure a certificate of registration; thereafter it shall bear a numbered plate. This certificate and plate shall be evidence of authority for operating the machine during the current year (§ 133). Registration fees are fixed according to horse-power—six dollars when 20 or less; twelve dollars when from 20 to 40; and eighteen dollars when in excess of 40 (§ 136). No person shall drive a motor vehicle upon the highway until he has obtained at a cost of two dollars an operator's license, subject to revocation for cause

(§ 137). Any owner or operator of an automobile, non-resident of Maryland, who has complied with the laws of the State in which he resides requiring the registration of motor vehicles, or licensing of operators thereof, etc., may under specified conditions obtain a distinguishing tag and permission to operate such machine over the highways for not exceeding two periods of seven consecutive days in a calendar year without paying the ordinary fees for registration and operator's license (§ 140a); but residents of the District of Columbia are not included amongst those to whom this privilege is granted (§ 132). Other sections relate to speed, rules of the road, accidents, signals, penalties, arrests, trials, fines, etc. All money collected under the provisions of the Act go to the commissioner, and except so much as is necessary for salaries and expenses must be paid into the state treasury to be used in construction, maintaining, and repairing the streets of Baltimore and roads built or aided by a county or the State itself. Section 140a is copied in the margin.[1]

---

[1] "140a. Any owner or operator not a resident of this State who shall have complied with the laws of the State in which he resides, requiring the registration of motor vehicles or licensing of operators thereof and the display of identification or registration numbers on such vehicles, and who shall cause the identification numbers of such State, in accordance with the laws thereof, and none other, together with the initial letter of said State, to be displayed on his motor vehicle, as in this subtitle provided, while used or operated upon the public highways of this State, may use such highways not exceeding two periods of seven consecutive days in each calendar year, without complying with the provisions of Sections 133 and 137 of this subtitle; if he obtains from the Commissioner of Motor Vehicles and displays on the rear of such vehicle a tag or marker which the said Commissioner of Motor Vehicles shall issue in such form and contain such distinguishing marks as he may deem best; provided, that if any non-resident be convicted of violating any provisions of Sections 140b, 140c, 140d, 140e and 140l of this subtitle, he shall thereafter be subject to and required to comply with all the provisions of said Sections 133 and 137 relating to the registration of

Plaintiff in error maintains that the act is void because —It discriminates against residents of the District of Columbia; attempts to regulate interstate commerce; violates the rights of citizens of the United States to pass into and through the State; exacts a tax for revenue—not mere compensation, for the use of facilities—according to arbitrary classifications, and thereby deprives citizens of the United States of the equal protection of the laws.

If the statute is otherwise valid, the alleged discrimination against residents of the District of Columbia is not adequate ground for us now to declare it altogether bad. At most they are entitled to equality of treatment, and in the absence of some definite and authoritative ruling by the courts of the State we will not assume that upon a proper showing this will be denied.  The record fails to disclose that Hendrick had complied with the laws in force within the District of Columbia in respect of registering motor vehicles and licensing operators, or that he applied to the Maryland commissioner for an identifying tag or marker—prerequisites to a limited use of the highways without cost by residents of other States under the plain terms of § 140*a.*  He cannot therefore set up a claim of discrimination in this particular.  Only those whose rights are directly affected can properly question the constitutionality of a state statute and invoke our jurisdiction in respect thereto. *Hatch* v. *Reardon,* 204 U. S. 152, 161; *Williams* v. *Walsh,* 222 U. S. 415, 423; *Collins* v. *Texas,* 223 U. S. 288, 295, 296; *Missouri,*

motor vehicles and the licensing of operators thereof; and the Governor of this State is hereby authorized and empowered to confer and advise with the proper officers and legislative bodies of other States of the Union and enter into reciprocal agreements under which the registration of motor vehicles owned by residents of this State will be recognized by such other States, and he is further authorized and empowered, from time to time, to grant to residents of other States the privilege of using the roads of this State as in this section provided in return for similar privileges granted residents of this State by such other States."

*Kansas & Texas Ry.* v. *Cade*, 233 U. S. 642, 648, and cases cited.

The movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves. Their success depends on good roads the construction and maintenance of which are exceedingly expensive; and in recent years insistent demands have been made upon the States for better facilities, especially by the ever-increasing number of those who own such vehicles. As is well known, in order to meet this demand and accommodate the growing traffic the State of Maryland has built and is maintaining a system of improved roadways. Primarily, for the enforcement of good order and the protection of those within its own jurisdiction the State put into effect the above-described general regulations, including requirements for registration and licenses. A further evident purpose was to secure some compensation for the use of facilities provided at great cost from the class for whose needs they are essential and whose operations over them are peculiarly injurious.

In the absence of national legislation covering the subject a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others. And to this end it may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horse-power of the engines—a practical measure of size, speed, and difficulty of control. This is but an exercise of the police power uniformly recognized as belonging to the States and essential to the preservation of the health, safety and comfort of their citizens; and it does not constitute a direct and material burden on interstate commerce. The reasonableness of the State's action is always subject to

inquiry in so far as it affects interstate commerce, and in that regard it is likewise subordinate to the will of Congress. *Barbier* v. *Connolly*, 113 U. S. 27, 30, 31; *Smith* v. *Alabama*, 124 U. S. 465, 480; *Lawton* v. *Steele*, 152 U. S. 133, 136; *N. Y., N. H. & H. R. R.* v. *New York*, 165 U. S. 628, 631; *Holden* v. *Hardy*, 169 U. S. 366, 392; *Lake Shore & Michigan Southern Railway* v. *Ohio*, 173 U. S. 285, 298; *Chicago, B. & Q. R. R.* v. *McGuire*, 219 U. S. 549, 568; *Atlantic Coast Line* v. *Georgia*, 234 U. S. 280, 291.

In *Smith* v. *Alabama*, *supra*, consideration was given to the validity of an Alabama statute forbidding any engineer to operate a railroad train without first undergoing an examination touching his fitness and obtaining a license for which a fee was charged. The language of the court, speaking through Mr. Justice Matthews, in reply to the suggestion that the statute unduly burdened interstate commerce and was therefore void, aptly declares the doctrine which is applicable here. He said (p. 480):

"But the provisions on the subject contained in the statute of Alabama under consideration are not regulations of interstate commerce. It is a misnomer to call them such. Considered in themselves, they are parts of that body of the local law which, as we have already seen, properly governs the relation between carriers of passengers and merchandise and the public who employ them, which are not displaced until they come in conflict with express enactments of Congress in the exercise of its power over commerce, and which, until so displaced, according to the evident intention of Congress, remain as the law governing carriers in the discharge of their obligations, whether engaged in the purely internal commerce of the State or in commerce among the States."

The prescribed regulations upon their face do not appear to be either unnecessary or unreasonable.

In view of the many decisions of this court there can be

no serious doubt that where a State at its own expense
furnishes special facilities for the use of those engaged in
commerce, interstate as well as domestic, it may exact
compensation therefor. The amount of the charges and
the method of collection are primarily for determination
by the State itself; and so long as they are reasonable and
are fixed according to some uniform, fair and practical
standard they constitute no burden on interstate com-
merce. *Transportation Co. v. Parkersburg,* 107 U. S. 691,
699; *Huse v. Glover,* 119 U. S. 543, 548, 549; *Monongahela
Navigation Co. v. United States,* 148 U. S. 312, 329, 330;
*Minnesota Rate Cases,* 230 U. S. 352, 405; and authorities
cited. The action of the State must be treated as correct
unless the contrary is made to appear. In the instant case
there is no evidence concerning the value of the facilities
supplied by the State, the cost of maintaining them, or
the fairness of the methods adopted for collecting the
charges imposed; and we cannot say from a mere inspec-
tion of the statute that its provisions are arbitrary or
unreasonable.

There is no solid foundation for the claim that the stat-
ute directly interferes with the rights of citizens of the
United States to pass through the State, and is con-
sequently bad according to the doctrine announced in
*Crandall v. Nevada,* 6 Wall. 35. In that case a direct tax
was laid upon the passenger for the privilege of leaving
the State; while here the statute at most attempts to
regulate the operation of dangerous machines on the
highways and to charge for the use of valuable facilities.

As the capacity of the machine owned by plaintiff in
error does not appear, he cannot complain of discrimina-
tion because fees are imposed according to engine power.
Distinctions amongst motor machines and between them
and other vehicles may be proper—essential indeed—and
those now challenged are not obviously arbitrary or
oppressive. The statute is not a mere revenue measure

and a discussion of the classifications permissible under such an act would not be pertinent.

There is no error in the judgment complained ·of and it is accordingly

*Affirmed.*