THE PEOPLE OF THE STATE OF NEW YORK on the Complaint of JOHN CONKLIN, Complainant, *v.* HOWARD MADDEN, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Fifth District, January 3, 1939.

*William C. Chanler, Corporation Counsel* [*Charles C. Weinstein* and *James Hurley* of counsel], for the complainant.

*Abel Just,* for the defendant.

BRILL, C. M. The defendant is charged with violating section B32-93.0 of the Administrative Code of the City of New York in that he operated a motor truck as a public cart without a license therefor.

The material facts of the case are not in dispute. Defendant was the driver of a motor truck owned by one Richard George who performed, under contract, a collection and delivery service for a forwarding concern known as the General Carloading Company. The latter was engaged solely in shipping by rail in interstate commerce. Defendant's truck was exclusively employed either in collecting merchandise from the consignor in the city of New York and delivering it at the railroad terminal from which it was shipped out of the State, or in receiving merchandise at the terminal and delivering it to the consignee within the city of New York. It did not carry any intracity or intrastate shipments and performed no cartage service for the general public. Its owner received no compensation from and had no relations as principal with consignor or consignee, but was paid directly by the carloading company at the rate of so much per hundred pounds.

Defendant claims that the truck operated by him is exempt from the public cart license provision of the Code in that it transports only interstate shipments and acts as a link in the chain of interstate commerce.

The People contend that the chain of interstate commerce began and ended at the railroad terminal and that delivery thereto or collection therefrom constituted a purely local enterprise subject to license by the city. Emphasis is placed upon the fact that defendant's truck was not owned or operated by the company engaged in interstate commerce but was owned and operated by another individual engaged in another business separate and apart from the interstate undertaking.

It is well settled that the power of Congress to regulate commerce between the States is an exclusive power and its exercise may not be limited, qualified or impeded to any extent by city or State action. (U. S. Const. art. 1, § 8, ¶ 3.) A city requirement that a license fee be paid for the privilege of engaging in interstate commerce is a condition precedent to conducting interstate business and constitutes a tax and burden upon interstate commerce, which is unconstitutional. (*Adams Express Co.* v. *New York*, 232 U. S. 14; *Sprout* v. *South Bend*, 277 U. S. 163; *People* v. *Von Rapacki*, 158 Misc. 823.) In *Adams Express Co.* v. *New York* (*supra*) the court held that an ordinance of the city of New York requiring the licensing of public expressmen was unconstitutional if applied to a public express engaged in interstate commerce. The court stated

(at p. 30): " But, if the above-mentioned sections are to be deemed to require that a license must be obtained as a condition precedent to conducting the interstate business of an express company, we are of the opinion that so construed they would be clearly unconstitutional. * * * Local police regulations cannot go so far as to deny the right to engage in interstate commerce, or to treat it as a local privilege and prohibit its exercise in the absence of a local license."

The truck in the instant case plies only in the city of New York and does not transport beyond city limits. A single act of carriage wholly within a city or State may be part of a continuous interstate transportation when it is included in the contract of carriage as an incident of the entire transportation and is not paid for independently. (*Adams Express Co.* v. *New York, supra,* at p. 28; *Swift & Co.* v. *United States,* 196 U. S. 375, 401; *Puget Sound Co.* v. *Tax Commission,* 302 id. 90, 93. Compare *New York ex rel. Pennsylvania R. Co.* v. *Knight,* 192 id. 21, 26, where the Pennsylvania Railroad Company's taxicab service from its terminal in the city of New York was " contracted and paid for independently of any contract or payment for strictly interstate transportation.")

The contention that the truck operated by defendant is owned by a local independent contractor and not by the company which actually is engaged in transportation across State boundaries does not serve to alter the fact that the truck is employed as an essential agency in the performance of a contract of interstate carriage. (*Puget Sound Co.* v. *Tax Commission, supra,* at p. 94, where Mr. Justice CARDOZO stated: " The fact is not important that appellant does business as an independent contractor as long as the business that it does is commerce immune from regulation by the States. What is decisive is the nature of the act, not the person of the actor.")

While neither State nor municipality may burden interstate commerce, a State may impose upon vehicles using its highways in interstate commerce regulations for insuring public safety and convenience and may require a reasonable license fee to defray the cost of administering and enforcing such regulations. Furthermore, interstate users of highways may be compelled to contribute to the cost of construction and maintenance. (*Hendrick* v. *Maryland,* 235 U. S. 610; *Kane* v. *New Jersey,* 242 id. 160; *Clark* v. *Poor,* 274 id. 554.) This power may be delegated in part to a municipality by appropriate legislation. (*Sprout* v. *City of South Bend,* 277 U. S. 163, 169, 170; *American Motor Coach System* v. *City of Philadelphia,* 28 F. [2d] 736.)

However, chapter 32 of article 15 of the Administrative Code of the City of New York is a legislative grant of power by the State of New York (Laws of 1937, chap. 929) to regulate public cartmen as to rate of transportation, number of men to be engaged, and disputes as to compensation (N. Y. City Administrative Code, § B32–96.0) and to license public carts therefor. (N. Y. City Administrative Code, §§ B32–93.0, B32–94.0.) It is not a grant of power to insure public safety and convenience or to compel contribution to the cost of constructing and maintaining highways. It purports to regulate intrastate business, and by its very nature is inapplicable to interstate commerce. It is similar in character to the ordinance involved in *Adams Express Co.* v. *New York* (232 U. S. 14, footnote, p. 26, § 333), declared to be unconstitutional if intended to apply to interstate commerce.

In August of 1935 the Congress of the United States enacted part II of the Interstate Commerce Act known as the Motor Carrier Act of 1935 (U. S. Code, tit. 49, §§ 301–327). This act (§ 302, subd. [a]) " purports " to regulate transportation by motor carriers and to promote adequate economical and efficient service and reasonable charges therefor. Section 302, subdivision (b), of the act vests in the Interstate Commerce Commission jurisdiction over the " transportation of passengers or property by motor carriers engaged in interstate or foreign commerce."

Section 303, subdivision (b), clause (8) excludes from the provision of the act the transportation of property in interstate commerce wholly within a municipality " except when such transportation is under a common control, management, or arrangement for continuous carriage or shipment to or from a point without such municipality."

While the truck in the instant case is engaged in transporting property in interstate commerce wholly within the city of New York, nevertheless, " such transportation is under a common * * * arrangement for a continuous carriage or shipment to or from a point without such municipality," and, therefore, falls within the exception contained in section 303, subdivision (b), clause (8) of the Motor Carrier Act. (See *Scott Bros., Inc., Collection & Delivery Service* [Interstate Commerce Comm. Rep.], 2 Motor Carrier Cases, 155, 160.)

The truck operated by defendant was employed exclusively in interstate commerce, not subject to article 15, chapter 32 of the Administrative Code of the City of New York, and, therefore, the complaint is dismissed.